**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:06cv447**

| | |
|---|---|
| **BONNIE KENNEDY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM OF DECISION** |
| ) | **AND** |
| **JOHN E. POTTER, in his official** ) | **ORDER OF DISMISSAL** |
| **capacity as Postmaster General,** ) | |
| **United States Postal Service,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to

Dismiss or, in the Alternative, for Summary Judgment [Doc. 8], filed

January 5, 2007, and the Defendant's Motion to Dismiss or, in the

Alternative, for Summary Judgment [Doc. 17], filed March 16, 2007.[1]


**PROCEDURAL HISTORY**

Plaintiff brings this action alleging age discrimination in her

employment with the Federal Government.  Plaintiff filed a complaint with

---

[1]The second motion makes an amendment within the text of one heading and is otherwise identical to the first.  As a result, the Plaintiff filed response only to the first motion.

the Equal Employment Office (EEO) of the United States Postal Service on April 19, 2005, [Doc. 11-3 at ¶13], "alleging discrimination on the basis of age, race, sex, and national origin." [Id.]. That claim was resolved by a settlement agreement between the Plaintiff and the Defendant, which was concluded on or about July 13, 2005. [Id. at ¶14]. Pursuant to that settlement agreement Plaintiff was provided a temporary position as the Supervisor of Customer Service at the Huntersville, North Carolina, post office. Upon her demotion from that position in January 2006, Plaintiff claimed that the Defendant had breached the settlement agreement and asked that her EEO complaint be "reopened." [Doc. 8-2 at Ex.5]. On February 23, 2006, the EEO resolved the matter against the Plaintiff and informed her of her rights to appeal to the Equal Employment Opportunity Commission, Office of Federal Operations (EEOC/OFO). [Doc. 8-2 at Ex.6]. Plaintiff availed herself of such appeal, and the EEOC/OFO rendered a decision in favor of the Defendant and against the Plaintiff on July 31, 2006. [Doc. 8-2 at Ex.7]. Plaintiff was informed in that decision of her right to file suit in the United States District Court, which Plaintiff did by filing this action on October 30, 2006. [Doc. 1].

The Defendant has filed two motions to dismiss both of which include motions for summary judgment. [Doc. 8, 17]. The Plaintiff has responded

to those motions and has submitted an affidavit and documents in response to the Motions for Summary Judgment. [Doc. 11 and attachments].  This matter is now ripe for determination.

## STANDARD OF REVIEW

"[W]hen a federal employee comes to court to challenge, in whole or in part, the administrative disposition of his or her discrimination claims, the court must consider those claims *de novo*, and is not bound by the results of the administrative process ... ." Laber v. Harvey, 438 F.3d 404, 424 (4th Cir. 2006), *quoting*  Morris v. Rumsfeld, 420 F.3d 287, 292 (3rd Cir. 2005), *certiorari denied* 547 U.S. 1092, 126 S.Ct. 1769, 164 L.Ed.2d 556 (2006).

Although the pleadings do not delineate the procedural rule pursuant to which the motion to dismiss is made, it appears that the motion is based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and/or Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Both of the parties have submitted matters outside the pleadings for consideration, thus consensually converting this motion to one for summary judgment and therefore, to the extent that relief is sought pursuant to Rule 12(b), the motion is treated as one for summary judgment.  Gibbs v. Bauknecht, 2007 WL 2822382 **5 (D.S.C. 2007),

*affirmed* 262 Fed.Appx. 539 (4th Cir. 2008). The motions made pursuant to

Rule 12(b) will thus be denied as moot.

In addressing a motion for summary judgment, the Court of Appeals

for this circuit has held

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th

Cir. 2003), *certiorari denied* 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d

732 (2004) (emphasis in original). A genuine issue exists if a reasonable

jury considering the evidence could return a verdict for the nonmoving

party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied*

513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202 (1986). "Regardless of whether he may ultimately be responsible for

proof and persuasion, the party seeking summary judgment bears an initial

burden of demonstrating the absence of a genuine issue of material fact."

Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

Moreover, in considering the facts for the purposes of this motion, the Court will consider the evidence presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 .Ct. 1348, 89 L.Ed.2d 538 (1986).


## FACTUAL BACKGROUND

Since the Court is addressing these motions in the posture of a Motion for Summary Judgment, the Court will address the facts as they appear in the forecasts of evidence presented by the parties, taken in the

light most favorable to the Plaintiff as the non-moving party. In her Memorandum of Law in Opposition to the Defendant's motions [Doc. 11], Plaintiff asserts that she relies on the facts presented in "Plaintiff's Exhibit [sic] 1 through 8; the Complaint in this matter; and the Government Exhibits filed with the Defendant's Motion." [Id. at 2 n.1]. Plaintiff's Complaint, however, is not verified, and has not been converted to any form of affidavit by incorporation into Plaintiff's subsequent affidavit. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denial of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522, *citing* Celotex, 477 U.S. at 325, 106 S.Ct. at 2553, 91 L.Ed.2d 265 (1986). Plaintiff's Complaint [Doc. 1], therefore, cannot be considered as part of the forecast of Plaintiff's evidence for the purposes of this motion. In addition, Plaintiff's Exhibits 4, 6 and 7 do not appear to be self authenticating documents, and are not referenced as being from the record before the EEO or the EEOC/OFO, and are not authenticated by the Plaintiff's testimony in her affidavit. As such, it does not appear that these documents come within the purview of Rules 56(c) and (e) to allow for their consideration as part of her forecast of evidence. The Plaintiff, therefore, stands on a very thin record to try to survive

summary judgment.  Nonetheless, that record reveals the following.

The Plaintiff was first employed by the United States Postal Service in 1978. [Doc. 11-3 at ¶3].  In 2004 she requested reassignment from her duty station of Staten Island, New York to Charlotte, North Carolina. [Id., at ¶7].  While pursuing this transfer Plaintiff was told by two Postal Service managers located in North Carolina that there were always open positions for Customer Service Supervisors, and that she should contact them after she had a closing date set on the sale of her house in New York. [Id., at ¶8].  After selling her home in New York, the Plaintiff was told by Dan Pierce, the Human Resources manager for the Mid-Carolinas District, that only Tom Callahan, the Postmaster for the Charlotte office, could approve the transfer Plaintiff sought.  [Id., at ¶11].  The Plaintiff claims that during this process she was told by Mr. Callahan that "he had no need for someone nearing retirement age. . . [and] that my age and seniority made me a 'short-timer,'" and that he had had trouble with "New Yorkers" in the past. [Id. at ¶12].  After that Callahan discontinued communications with the Plaintiff. [Id.].

On April 19, 2005, Plaintiff then filed a complaint[2] with the Equal

[2] The EEO Process within the United States Postal Service is initiated by a form entitled "Information for Pre-Complaint Counseling" which is PS Form 2564-A.  The two forms of this type filed by the Plaintiff with the EEO for the USPS are simply referred to

Employment Office of the Postal Service, alleging discrimination based on

"age, race, sex, and national origin." [Id. at ¶13]. The parties reached a

settlement agreement in July 2005. [Id. at ¶14-15]. The settlement

provided as follows:

> Ms. Bonnie Kennedy will be detailed to the position of Supervisor,
> Customer Services, EAS-17 at Huntersville, NC effective July 23,
> 2005 for a period of up to 6 months. During the period of the
> detail assignment, Ms. Kennedy's job performance will be
> evaluated by the Postmaster, Huntersville. If the Postmaster,
> Huntersville determines that Ms. Kennedy's performance is
> satisfactory during the period of the detail assignment, then Ms.
> Kennedy will be offered the position on a permanent basis. If the
> Postmaster determines Ms. Kennedy's performance is
> unsatisfactory, then Ms. Kennedy will receive a permanent
> reassignment to the position of Sales and Services Associate,
> PS-5, (PTF Clerk) in Charlotte, North Carolina in accordance with
> the provisions of the National Collective Bargaining Agreement.
>
> The detail assignment will be terminated at the request of either
> party. If the detail assignment is terminated at the request of
> either party, then Ms. Kennedy will receive a permanent
> reassignment to the position of Sales and Services Associate,
> PS-5 (PTF Clerk) in Charlotte, North Carolina in accordance with
> the provisions of the National Collective Bargaining Agreement.

[Id. at ¶15, Doc. 8-2 Ex.3 at 9]. The document is entitled "ADEA Settlement

Agreement Form" and contains an explicit acknowledgment that "this is a

settlement of claims under the Age Discrimination in Employment Act (ADEA)

of 1976, as amended 19 U.S.C. §633a[.]" [Doc. 8-2 Ex.3 at 8, 10]. The

---

in this opinion as EEO complaints.

settlement agreement also contained the following acknowledgment by the Plaintiff: "I had adequate time to consider my decision to agree to settle this Equal Employment Opportunity Complaint. I have been advised of my right to seek the advice of an attorney prior to signing this agreement." [Id., at 10].

The Plaintiff claims that after entering into the settlement agreement, she was told by Pierce that she "would never make" the six month probationary period. [Doc.11-3 at ¶16]. Nonetheless, she began the supervisor position in Huntersville in July 2005. [Id., at ¶17]. The Plaintiff claims that during this six month period, she was assigned menial tasks that other management employees did not want to perform. [Id., at ¶18]. She was excluded from management meetings and was given the least desirable shifts while lower ranking employees were given more desirable shifts. [Id. at ¶19, 21].

The Plaintiff claims that two months into her six month probationary period, a job posting was made for her position by Mike Figlia, the Huntersville Postmaster. [Id., at ¶23]. When she complained to Figlia, the job posting was removed. [Id.].

In January 2006 the Plaintiff received a performance evaluation from Figlia, and he informed her that he had decided not to retain the Plaintiff in the supervisor position, but rather to demote her to a position as Sales and

Services Associate. He did this even though he had been detailed to another location for the six months that Plaintiff worked at Huntersville and thus was personally unaware of her performance. [Id. at ¶¶24, 30-31]. By letter to the Plaintiff dated January 18, 2006, Figlia acknowledged the demotion and that due to his absence from the Huntersville Post Office during the Plaintiff's six month detail, he had made the final evaluation with in-put from the officer in charge. [Doc. 8-2 Ex. 4].

Plaintiff also asserts that she was disciplined for absences which she claims should have been covered by the Family Medical Leave Act, [Doc. 11-3 at ¶25], and that she was disciplined for failing to follow protocol for the investigation of an on-the-job accident in which one of the other employees at Huntersville was injured. [Id., at ¶26]. Figlia, in his demotion letter, acknowledged that these were factors in the Plaintiff's reassignment. [Doc. 8-2, Ex.4]. In addition, the officer in charge of the Huntersville post office reported that the Plaintiff was "not a team player" and had a strained relationship with her co-workers. For example,

> [i]nstead of directly discussing situations with your fellow supervisors, you left hand written notes for them to read. One of the most important aspects of running an office is the cooperation and communication between the management staff.

[Id.].

On January 24, 2006, Plaintiff filed a new "Information for Pre-Complaint Counseling" with the EEO.  The Plaintiff listed as discrimination factors "color/age/national origin/physical disability/retaliation."  [Doc. 16-2, Ex. 9 at 1].  The form required the Plaintiff to describe the incident or action which prompted the Plaintiff to seek counseling. [Id.].  Her only comment was: "On 1/18, 2006, I was told by Michael Figlia, Postmaster of Huntersville, NC, that I was not being retained in the position of Supv. c/s in Huntersville." [Id.].  The Plaintiff did not include on the form any allegations of discrimination which had occurred during the detail, and for this reason it was processed as an allegation of breach of the settlement agreement. [Id., at 2].  In fact, the form which was signed by the Plaintiff contained the following acknowledgment by her:

> I am aware that the claim(s) contained herein shall by-pass the pre-complaint process *if* like or related to a formal complaint that I have already filed, or *if* the claim(s) constitutes a spin-off complaint.  (A spin-off complaint contests the manner in which a previously filed complaint is being processed.).  In completing this PS Form 2564-A, *Information for Pre-complaint Counseling*, I recognize that the Manager, Dispute Resolution will review the claim(s) contained herein and determine how they shall be processed, I will be notified, in writing, if the Manager determines that my claim(s) shall be processed as amendments or appendages to a formal complaint that I have already filed.

[Id., at 3] (emphasis in original).

In addition to submitting the "Information for Pre-Complaint

Counseling," the Plaintiff also sent an undated letter requesting that her earlier EEO case be re-opened because the "Postal Service violated the agreement we reached on July 13, 2005." This letter was received by the EEO on the same date as it received the new EEO complaint, January 24. [Doc. 8-2, Ex. 5].

The EEO conducted an investigation and provided a final decision on February 23, 2006. [Id., Ex. 6]. The decision noted the Plaintiff's allegations of the manner in which the settlement agreement had been breached; *i.e.*, she was forced to perform menial tasks; she was excluded from management meetings; there was no communication except through Post-It notes; other employees showed open hostility; she received the least desirable shifts; her performance was evaluated by her direct supervisor, instead of by Figlia, the Postmaster; the dismissal was a pretext because Figlia never intended to make her permanent; her absences should have been excused under the FMLA; and she was never trained in the procedure and protocol for accident investigation and reporting. [Id., at 2-3]. The EEO reached the following conclusions in its final decision: (1) the Plaintiff agreed to and was placed in the closing supervisor detail for the six month period; (2) because Figlia was detailed to a different assignment during that six month period, it was appropriate

for the Plaintiff to be evaluated with in-put from the acting installation head;

(3) management records showed that the Plaintiff had received training in

all aspects of the job, including the protocol for reporting accidents; (4) the

Plaintiff had unexplained attendance issues; and (5) other supervisory staff

reported her inability to communicate and cooperate.  [Id., at 4].  The EEO

concluded that management had appropriately handled the matter and that

the settlement agreement had not been breached.  [Id.].  It was specifically

noted that under the terms of the settlement agreement, the detail could be

terminated at the request of either party and management could offer the

position to the Plaintiff permanently or permanently reassign her.  [Id.].

The Plaintiff was advised that she could appeal the decision to the Equal

Employment Opportunity Commission (EEOC) within 30 days of receipt of

the decision.  [Id.].

The Plaintiff did appeal the decision and on July 28, 2006, the Office

of Federal Operations (OFO) of the EEOC rendered its decision. [Doc. 8-2,

Ex. 7].

> [T]he Commission notes that the instant settlement agreement
> specifically provided the agency with the ability to offer
> complainant the position on a permanent basis *or reassign her* to
> a Sales and Services Associate position.  To the extent that
> complainant blames the agency's determination not to convert her
> detail to a permanent position on her lack of training, menial
> tasks, undesirable shifts, exclusions from meeting, unsatisfactory

ratings, *etc.*, we find that these events are not part of the settlement agreement. If complainant wishes to pursue these matters, which occurred during her six-month detail, through the EEO process she is advised to seek counseling. Accordingly, the agency's decision finding it was in compliance with the settlement agreement was proper and is hereby AFFIRMED.

[Id., at 3]. The OFO advised the Plaintiff of her right to bring a lawsuit in federal court and she subsequently filed this lawsuit. The advice to Plaintiff to "seek counseling" regarding the events occurring during the six-month detail is simply EEO-speak for a direction that Plaintiff needed to file a separate EEO complaint regarding such events if she desired to pursue any relief therefor.

It is undisputed that the Plaintiff did not file a new complaint with the EEO regarding incidents which occurred during the six month detail. [Doc. 8-3]. The Plaintiff asserts that she went to the EEO office on February 7, 2006 to file additional claims but was told she was unable to do so due to her pending appeal. [Doc. 11-3 at 7]. She also claims that after the OFO decision, she called the EEO again on July 31, 2006 to "seek counseling" regarding the latter acts of discrimination but was told this was not possible since she had begun litigation, [Id.] even though no litigation was pending at that time. This lawsuit was not commenced until October 2006. [Doc. 1].

**DISCUSSION**

**The Claims Presented - Claims Limited by Plaintiff's Filings**

Before addressing the merits of the Plaintiff's case, it is necessary to determine what claims are before the Court. In her Complaint, [Doc. 1], Plaintiff alleges a claim for age discrimination. She couches the claim, however, in terms of "a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.," with repeated references to that statute. There is, of course, no claim for age discrimination under Title VII, but only pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq. It is noted that in her complaint to the EEO the Plaintiff asserted that she alleged discrimination "on the basis of age, race, sex, and national origin." [Doc. 11-3 at ¶13]. There is, however, no evidence, and no allegation, of what Plaintiff's race and national origin[3] are, much less that there was any discrimination based thereon. The only evidence as to Plaintiff's gender, other than assumptions that can be drawn from her name, is her statement in her affidavit that she attended the July 13, 2005 mediation with her husband. [Doc. 11-3 at ¶14]. Again,

---

[3] Plaintiff includes in her affidavit evidence of the derogatory remark she claims was made by Callahan with regard to Plaintiff being a "New Yorker." [Doc. 11-3 at ¶12]. The Court does not construe this as evidence of any national origin or an assertion of any national origin claim under title VII.

there is no allegation made or evidence presented that would tend to show any discrimination based on sex.  In fact, there is no allegation or evidence of Plaintiff's age, except that she began work with the Postal Service in 1978, and had been with the Service for more than twenty-six years when the alleged acts of discrimination occurred.  Taking this evidence in the light most favorable to the Plaintiff, it can be inferred that Plaintiff falls within the age category protected by the ADEA.  For these reasons, all Plaintiff's claims brought pursuant to Title VII will be dismissed, and all claims for race, sex and national origin discrimination will be dismissed.  As for all allegations made by the Plaintiff regarding any age discrimination claims purportedly brought pursuant to Title VII, the Court will treat these claims as having been brought pursuant to the ADEA.

A determination also needs to made as to which discriminatory acts alleged by the Plaintiff form the basis for claims properly before this Court. Plaintiff alleges several discriminatory acts occurring between the execution of the July 13, 2005, settlement agreement and her performance evaluation and demotion on January 18, 2006.   None of them, however, were presented as part of either of the Plaintiff's administrative complaints before the EEO and the EEOC/OFO.  The first EEOC complaint alleges discrimination in denying the Plaintiff the transfer to North Carolina. [Doc.

8-s at 4].  The second EEO complaint only claims discrimination based on the event that "I was told by Michael Figlia, Postmaster of Huntersville, NC that I was not being retained in the position of Supv. C/S in Huntersville." [Doc. 16-2 at 5].  In this second EEO complaint the Plaintiff makes no new allegations of discriminatory acts.  For this reason the EEO and the EEOC/OFO interpreted the January 2006 complaint as asserting that the Defendant had breached the terms of the July 2005 settlement agreement, and that the Plaintiff was seeking redress therefor. [Doc. 8-2, Ex. 7 at 25].

> For a Federal employee there are
>
> two alternative routes for pursuing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies.  See 29 U.S.C. §633a(b) and (c).  A federal employee complaining of age discrimination, however, does not have to seek relief from his employing agency or the EEOC at all.  He can decide to present the merits of his claim to a federal court in the first instance.  See [29 U.S.C.] §633a(d).

Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991).  As such, the fact that Plaintiff did not raise her claims of discrimination that post date July 13, 2005, in the EEO administrative proceeding are not fatal to her claim.  She had an alternative available to her. This is of particular importance, because Plaintiff claims that she attempted to file a third administrative complaint with the EEO regarding these later acts

of discrimination but she was told that she could not do so. [Doc. 11-3 at 7].

As such, Plaintiff concedes that she has not pursued these claims administratively.   In order to file an action based on allegations not raised in an administrative proceeding, however, the employee must meet a condition precedent.

> If an individual alleging age discrimination had not filed a complaint with the EEOC, he may not file a civil action under section 633a until he had given the EEOC at least thirty days notice of intent to file such action. 29 U.S.C. §633a(d).   This notice must be filed within 180 days of the date when the alleged unlawful practice occurred.  Id.

Podobnik v. United States Postal Service, 409 F.3d 584, 589-90 (3d Cir. 2005).  There is absolutely nothing before this Court to show that the Plaintiff filed such a notice with the EEOC regarding the alleged discriminatory acts that occurred between July 13, 2005, and January 18, 2006.  Therefore, no claim based on these later acts is properly before this Court.  The separate question of whether the Plaintiff preserved her retaliation claim is addressed infra.  The only discrimination claims that Plaintiff presents herein, however, pertain to the earlier allegations of age discrimination in declining to transfer the Plaintiff to North Carolina and the alleged subsequent breach of the settlement agreement.

**Claims Presented - Claim Limited by Sovereign Immunity**

Having determined that only the alleged age discrimination prior to the July 2005 settlement and the alleged breach of that settlement form the basis for the Plaintiff's claims, the Court must now determine what claims Plaintiff has presented that arise from those alleged facts.

Discrimination claims against the government brought by federal employees present a particular procedural difficulty when the claim at issue has been settled and there is an allegation that such settlement agreement has been breached.

The Court of Appeals for this Circuit has stated in <u>Frahm v. United States</u>, 492 F.3d 258 (4th Cir. 2004)

> "The United States, as sovereign, is immune from suit save as it consents to be sued... ." Congress has, admittedly, waived sovereign immunity in [ADEA] suits where the federal government is the employer. However, this statutory waiver does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a[n] [ADEA] dispute. Even if the matter were at all ambiguous, the issue is resolved by the rule that the "scope" of a "waiver of the Government's sovereign immunity will be strictly construed ... in favor of the sovereign." Because neither the settlement agreement nor a statute allow [the Plaintiff] to sue the government for breach of the settlement agreement, her [claim thereon is] properly dismissed.

<u>Id</u>. at 262, (citations omitted). For this reason the Plaintiff herein cannot present a claim for damages based on the alleged breach of the settlement

agreement.

The federal government has further limited by regulation the form of relief which may be sought by a party alleging the breach of an ADEA settlement agreement. The pertinent regulation, 29 C.F.R. §1614.504(a), provides

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. *The complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased*.

Id. (emphasis added). There is no provision for both remedies. The employee may either enforce the agreement *or* have the original discrimination claim reinstated because of the breach. "By its plain language, the regulation permits an employee who claims a breach of a[n] [ADEA] agreement to elect between only two options." Frahm, 492 F.3d at 263. "With the use of the word 'alternatively,' the regulation sets out the only alternatives that may be chosen." Id.; Osahar v. Postmaster General of U.S. Postal Service, 263 Fed.Appx. 753 **10 (11th Cir. 2008); Alcivar v. Wynne, 2008 WL 647504 **1, 4 (10th Cir. 2008), *petition for certiorari filed* June 7, 2008 ("A plaintiff may not simultaneously sue to enforce the [settlement agreement]

and seek to recover on the underlying claims of discrimination and retaliation.")(citations omitted). For this reason, the Plaintiff has had to elect between an action to enforce the settlement agreement or a claim for damages stemming from the alleged age discrimination in declining to transfer the Plaintiff to North Carolina.

Plaintiff makes her election in her Complaint. In the prayer for relief Plaintiff writes that she seeks "on her claim for violations of Title VII of the Civil Rights Act of 1964 [sic] as amended, Plaintiff have and recover *compensatory damages*." [Doc. 1 at 13] (emphasis added). Nowhere in her Complaint or in any other filings with this Court does the Plaintiff indicate that she seeks enforcement of the July 13, 2005, settlement agreement and reinstatement in accord therewith. Moreover, Plaintiff reaffirms this by arguing to the Court that "because the Agency [Defendant] breached the implied and express terms of the settlement agreement, Ms. Kennedy is entitled to re-litigate the issues surrounding her transfer to North Carolina." [Doc. 11 at 16]. As such, Plaintiff's filings make clear that the one remaining cognizable discrimination claim that Plaintiff presents herein is her claim for damages for age discrimination in declining to transfer her to North Carolina in 2005.

**Age Discrimination Claim**

Defendant raises the July 13, 2005, settlement agreement as a defense to the Plaintiff's claim. "[I]f it is found that the Department did not breach the agreement, then the settlement will bar Saksenasingh from proceeding with her original claim." Sakssenasingh v. Secretary of Educ., 126 F.3d 347, 350 (D.C.Cir. 1997). Thus, in order to survive summary judgment on the underlying discrimination claim the Plaintiff must have presented a forecast of evidence that the settlement agreement was breached by the Defendant.

"Where a party raises a settlement agreement as a defense, the District Court must factually determine the issues surrounding the agreement." Sakssenasingh, 126 F.3d at 350. The interpretation of a contract, including a settlement agreement resolving an employment discrimination claim, is a question of law. Frahm, 492 F.3d at 262, *citing* Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir. 1984). Where the contract "admits of only one reasonable interpretation," a district court may decide the construction thereof on summary judgment. UMWa 1974 Pension v. Pittston Co., 984 F.2d 469, 473 (D.C.Cir. 1993), *certiorari denied* 509 U.S. 924, 113 S.Ct.3040, 125 L.Ed.2d 726 (1993). When the language of the contract is unambiguous, the court must give effect to its ordinary, natural, plain meaning. Howe v. First Tennessee Nat. Corp., 256 Fed.Appx. 586 (4th Cir. 2007), *citing* Catawba

Indian Tribe of South Carolina v. City of Rock Hill, 501 F.3d 368 (4th Cir. 2007). The language of the contract in this case is clear, specific and unambiguous:

> [Plaintiff] will be detailed to the position of Supervisor, Customer Services, EAS-17 at Huntersville, NC effective July 23, 2005 for a period of up to 6 months. During the period of the detail assignment, [Plaintiff's] job performance will be evaluated by the Postmaster, Huntersville. If the Postmaster, Huntersville determines that [Plaintiff's] performance is satisfactory during the period of the detail assignment, then [Plaintiff] will be offered the position on a permanent basis. *If the Postmaster determines [Plaintiff's] performance is unsatisfactory, then [Plaintiff] will receive a permanent reassignment to the position of Sales and Services Associate, PS-5[] in Charlotte, North Carolina in accordance with the provisions of the National Collective Bargaining Agreement.*
>
> ***The detail assignment will be terminated at the request of either party.*** *If the detail assignment is terminated at the request of either party, then Ms. Kennedy will receive a permanent reassignment to the position of Sales and Services Associate, PS-5, (PTF Clerk) in Charlotte, North Carolina in accordance with the provisions of the National Collective Bargaining Agreement.*

[Doc. 8-2] (emphasis added).

Under the language of the contract, regardless of whether the Postmaster determined the Plaintiff's performance to be satisfactory or unsatisfactory, if either party requested that the Plaintiff's detail as supervisor be terminated, it would be terminated. Plaintiff settled her claim by accepting an "at will" appointment as supervisor in the location she desired, North

Carolina, with the right to remain employed in North Carolina at a lesser position if the supervisor position was terminated. That was the deal the Plaintiff struck. The Postmaster requested that the detail be terminated and the Plaintiff was reassigned to a different position. Sakssenasingh, 126 F.3d at 350. As in Frahm, other clauses in the agreement make it clear that the settlement agreement constituted the entire understanding of the parties. The Plaintiff's allegations that she was not properly supervised during her detail and that she was evaluated by the wrong person are not relevant. The language of the contract is unambiguous and the Defendant had the contractual right to terminate the supervisory position. As a result, the Court must conclude as a matter of law that the Defendant did not breach the settlement agreement. Plaintiff argues that Defendant breached the agreement by improperly reprimanding her for being absent when she claims she was entitled to FMLA time for the absences, by improperly reprimanding her for the manner in which she investigated and reported the on-the-job accident of another employee and by Mr. Figlia having issued the critical performance evaluation based upon the reports of other supervisors. None of these facts, however, are of any consequence. Pursuant to the terms of the settlement agreement negotiated by Plaintiff, the Defendant had the option to demote Plaintiff to a specified position. Hence, the acts complained

of do not constitute breaches of the agreement. Since proving breach is a condition to Plaintiff being able to pursue her claim for damages based on discrimination, the Plaintiff's age discrimination claim must fail. The Defendant's Motion for Summary Judgment as to this issue will, therefore, be granted.

**Retaliation Claim**

With regard to the retaliation claim there is a threshold matter as to whether the United States has waived sovereign immunity with regard to a retaliation claim under the ADEA. The Defendant cites the case of Gomez-Perez v. Potter, 476 F.3d 54 (1st Cir. 2007) for the proposition that there is no such cognizable claim. Since the briefs were filed in this case, however, the Supreme Court has specifically decided this issue and has reversed the case upon which the Defendant bases its argument. Gomez-Perez v. Potter, 128 S.ct. 1931, 170 L.Ed.2d 887 (2008). As such, this is not an impediment to the Plaintiff's retaliation claim.

The Court must next determine whether the Plaintiff has preserved her claim of retaliation. If she has failed to preserve her claim through her administrative appeal, then the claim has been abandoned. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106

(2002). In her second EEO complaint the Plaintiff has filled out an EEO form that asks "What factor(s) of Discrimination are you alleging?" by answering "Color/age/national origin/physical disability/retaliation." [Doc. 16-2 at 5]. Even though the form specifically instructs to "Please be specific, i.e. [sic] Race-African American, Sex-Female," Plaintiff completed the form without any such specifics. In the next section of the form Plaintiff was asked "For Retaliation Allegations Only. If you are alleging retaliation discrimination, provide the date(s) and specifics of the EEO activity that you feel caused you to be retaliated against." Plaintiff answered by stating that "on 7/13/05 I engaged in EEO activity, Case No. 4C-280-0106-05." [Id.]. Plaintiff gave no further detail as to the nature of her retaliation claim. The events of July 13, 2005, were, of course, the *settlement* of the original EEO complaint by entering into the settlement agreement at the mediation. Thus, taking Plaintiff's allegations literally, she claims that she was retaliated against for having settled her prior claim. The retaliatory action she alleges is being demoted from her supervisory position by Mike Figlia. [Id.].

Plaintiff's matter then came before EEO Alternative Dispute Resolution Specialist, P.W. Cornelison, who addressed Plaintiff's new allegations. Ms. Cornelison stated in her decision that "additional information was requested from you to clarify your allegations," [Doc. 8-2 at 19], and went on to recount

the contents of the detailed allegations made by Plaintiff in a letter dated February 17, 2006, by which she continued to prosecute her administrative claim. By this it is clear that Plaintiff chose to pursue only the claim for breach of the agreement. No mention is made of the retaliation claim. For this reason, the EEO decision regarding the claim contains nothing regarding the retaliation claim. [Id.]. There is nothing before the Court to indicate that the Plaintiff preserved her retaliation claim before the EEO. Likewise, there is nothing in the record to show that Plaintiff preserved the retaliation claim when she appealed to the EEOC/OFO. The EEOC/OFO decision of July 31, 2006, is in the record [Doc. 8-2 at 24], but the "timely appeal" referred to therein is not before this Court. Since the EEOC/OFO decision addresses only the breach issue and does not mention the retaliation claim, the Court can only wonder whether the appeal document contained any reference to retaliation. It is, of course, incumbent upon the Plaintiff to present to this Court a forecast of evidence that she has preserved her retaliation claim. There is nothing in this record to so indicate. As with Plaintiff's age claims, if she has failed to preserve her retaliation claim through the administrative process, it was incumbent upon the Plaintiff to file a notice with the EEOC of her intent to proceed directly to the District Court with the retaliation claim at least thirty days before filing suit. 29 U.S.C. §633a. There is nothing in the

record to reflect that Plaintiff has done so.

Even if the Plaintiff had administratively preserved her retaliation claim or filed the EEOC notice, and even if Plaintiff's allegation of retaliation could be construed so broadly as to encompass retaliation for having filed the original (April 19, 2005) EEO complaint, the Plaintiff's retaliation claim would still fail because she has failed to present the requisite forecast of evidence.

A plaintiff who lacks direct evidence of retaliation may prove her claim by using the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff has the initial burden of showing: (1) that she engaged in protected activity; (2) that the employer took an adverse action against her; and (3) that a causal relationship exists between the protected activity and the employer's action. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). If the plaintiff is successful in establishing this prima facie case, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse action. Id. If the employer sets forth a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to show that the employer's proffered reason for the action is merely a pretext for unlawful discrimination. Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). The plaintiff may prove pretext "either by showing that [the employer's] explanation

is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of ... discrimination." Id. at 336.

In the present case, the parties apparently agree, for the purposes of this summary judgment motion, that the Plaintiff can satisfy the first two prongs of the prima facie case, namely that the Plaintiff engaged in protected activity when she filed her initial EEOC claim on April 19, 2005, and that the Plaintiff suffered an adverse action when she was reassigned from the supervisor position in Huntersville to the clerk position in Charlotte. With respect to the third prong, the Plaintiff has presented a forecast of evidence that shows a causal connection between her protected activity and the Defendant's decision to reassign her. The Plaintiff's transfer to the Huntersville office, and the conditions under which she was reassigned elsewhere, were explicitly set forth in the settlement agreement resolving her EEO claim.

Because the Plaintiff has established a prima facie case of retaliation, the burden shifts to the Defendant to establish a legitimate, non-discriminatory reason for the adverse action. The reasons proffered by the Defendant for the Plaintiff's reassignment are set forth in Figlia's January 18, 2006 letter [Doc. 8-2, Ex. 4], which summarizes the evaluation of Plaintiff's performance during the six-month detail at the Huntersville post office. While noting that

the Plaintiff had performed satisfactorily in several job areas, Figlia found that Plaintiff's job performance was unsatisfactory in three key areas. First, the Plaintiff's "attendance was less than acceptable," as she incurred nineteen absences during the six-month period. [Id.]. Second, the Plaintiff failed to follow protocol in investigating an accident which occurred on the job site on December 17, 2005. Third, Figlia noted that the Plaintiff had not been "cooperative with the Huntersville supervisory staff," and that according to the OIC, the Plaintiff had a "strained" relationship with the other supervisors and was not considered "a team player."

While the Plaintiff asserts that each of these proffered reasons are pretextual, she has failed to present a forecast of evidence from which a reasonable jury could find that the Defendant's proffered reasons are false. See Price, 380 F.3d at 217 ("While it is permissible for the trier of fact to infer the ultimate fact of retaliation from the falsity of the employer's explanation, it is axiomatic that the plaintiff must in fact provide sufficient evidence from which a reasonable trier of fact could find falsity.") (internal citation, quotation marks, and alterations omitted). With respect to her poor attendance, the Plaintiff asserts in her affidavit that she was absent for 17 days because she contracted pneumonia and that she was absent for an additional two days due to an unrelated stomach virus. [Doc. 11-3 at ¶25]. The Plaintiff attempts to

show that these absences were legitimate by asserting that she filed "FMLA paperwork with the USPS on October 19, 2005." [Id.].  The Plaintiff, however, offers no forecast of evidence that she was eligible to take FMLA leave for these absences or that she followed the proper procedures for seeking FMLA leave.  Nor has she shown that her request for FMLA leave was considered but was improperly denied.  Because the Plaintiff's forecast of evidence fails to show that these absences were legitimate, the Plaintiff has failed to create an issue of fact as to whether the reason proffered for her reassignment was false.

As for the Plaintiff's failure to investigate an on-site accident in the proper manner, the Plaintiff concedes that she did not follow the established protocol for reporting such accidents.  She argues, however, that she was never trained adequately on the proper procedure.  The forecast of evidence presented by the Defendant demonstrates that the Plaintiff received Accident Investigation Training in February 2001.  Moreover, if the Plaintiff felt that she was inadequately trained, the Plaintiff could have asked the OIC or any of the other supervisors in the office about the proper protocol for the investigation. Plaintiff offers no evidence that she did so.  For these reasons, the Plaintiff's claim that she was inadequately trained on investigative procedures fails to show that the Defendant's proffered reason was pretextual.

Finally, the Plaintiff disputes the Defendant's conclusion that she was not cooperative with the Huntersville supervisory staff and not considered to be a team player. Specifically, she asserts that she "conducted [herself] as a professional and completed the tasks requested of [her]," but that her co-workers repeatedly excluded her from management meetings and that other management personnel refused to communicate directly with her. [Doc. 11-3 at ¶¶19-20]. The Plaintiff's forecast of evidence fails to demonstrate that the Defendant's proffered reason is pretextual. Regardless of the true nature of the Plaintiff's relationship with her co-workers, the Defendant has presented a forecast of evidence that Figlia honestly believed that the Plaintiff was not cooperative with other employees at the Huntersville office. "[U]ltimately, it is the perception of the decisionmaker which is relevant." Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) (granting summary judgment where plaintiff's evidence failed to address whether employer did not believe the reason proffered for termination was credible) (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998)), cert. denied, 128 S.Ct. 955, 169 L.Ed.2d 734 (2008).

For these reasons the Plaintiff's retaliation claim must fail. The Defendant's Motion for Summary Judgment as to this issue will be granted.

**Plaintiff's State Law Claims**

In her Complaint, Plaintiff attempts to assert claims against the Defendant for intentional inflection of emotional distress and for wrongful termination in violation of public policy, both state law claims.

At the conclusion of the Plaintiff's brief in response to the Motion for Summary Judgment, she concedes that these state law claims should be dismissed. She mistakenly believes, however, that she may voluntarily dismiss them without prejudice. Federal Rule of Civil Procedure 41(a) provides that a plaintiff may voluntarily dismiss an action without a court order by filing a notice of dismissal only before the opposing party serves either an answer or a motion for summary judgment. Fed.R.Civ.P. 41(a)(1)(A)(i). Because the Defendant has filed a motion for summary judgment, the Plaintiff may not dismiss without prejudice.

The Defendant raised this issue in the Reply to the Plaintiff's response. [Doc. 16]. The Plaintiff did not seek to make further response in light of this argument. The brief which she filed in opposition to the Motion for Summary Judgment contains no argument in opposition to the Defendant's posiiton on this issue. As a result, and because summary judgment is appropriate in any event, it will be granted as to these two state law claims. "[L]iability arises under th[e] tort [of intentional infliction of emotional distress] when a

33

defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.'" <u>Morrison-Tiffin v. Hampton</u>, 117 N.C.App. 494, 504, 451 S.E.2d 650, 660 (1995), *review denied* 339 N.C. 739, 454 S.E.2d 654 (1995). "In ruling on a motion for summary judgment, whether a defendant's alleged acts may be reasonably regarded as extreme and outrageous is initially a question of law." <u>Shreve v. Duke Power Co.</u>, 85 N.C.App. 253, 257, 354 S.E.2d 357, 359 (1987). As a sovereign, the United States may not be sued, except by its consent. <u>Nevada v. Hall</u>, 440 U.S. 410, 414, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). Tort claims against the United States Postal Service are covered by the Federal Tort Claims Act (FTCA). <u>Global Mail Ltd. v. United States Postal Service</u>, 142 F.3d 208, 211 (4th Cir. 1998). Suits under the FTCA must be brought against the United States not a particular federal agency. 28 U.S.C. §2679. A federal employee's attempt to bring state law claims against the postal service is thus barred because the claims could only have been brought pursuant to FTCA against the United States. <u>Tesh v. U.S. Postal Service</u>, 215 F.Supp.2d 1220 (N.D.Okla. 2002). The federal statutory scheme for the redress of employment discrimination is the exclusive and preemptive remedy for such discrimination. <u>Pueschel v. United States</u>, 369 F.3d 345, 348 (4th Cir. 2004).

> [W]e reach the question whether the federal government is liable
> for breaching some duty of care under state law if (and only if) we
> can first find an applicable waiver of sovereign immunity by the
> federal government itself.  To overcome the discretionary function
> exception and thus have a chance of establishing a waiver of
> sovereign immunity, plaintiff[] must show that the federal
> employee's discretion was limited by "a *federal* statute, regulation,
> or policy," after all, states can't waive the federal government's
> immunity."  "Indeed, the only conceivable way plaintiff[] might
> succeed on [her] theory is by pointing to a *federal* policy
> incorporating state tort law as a limit on the discretion of federal
> employees with[in] the meaning of the [Federal Tort Claims Act].
> And this plaintiff[] ha[s] not done.

Sydnes v. United States, 523 F.3d 1179, 1184 (10th Cir. 2007).  As such, a claim for wrongful discharge under state law alleging retaliatory discharge does not state a claim.  Efird v. Riley, 342 F.Supp.2d 413 (M.D.N.C. 2004). For these reasons the Defendant's Motion for Summary Judgment as to the claims for intentional infliction of emotional distress and wrongful termination will be granted.


**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 8] and the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 17] are hereby **GRANTED** and this action is hereby **DISMISSED** in its entirety with prejudice by Judgment entered simultaneously herewith.

Signed: December 3, 2008

Martin Reidinger
United States District Judge